James Franklin REEVES, Appellee,

v.

Amos E. REED, Appellant.

No. 78-6278.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1979.

Decided April 19, 1979.

Joan H. Byers, Associate Atty. Gen. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Richard N. League, Asst. Atty. Gen., Raleigh, N. C., on brief), for appellant.

Norman B. Smith, Greensboro, N. C. (Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WIDENER and HALL, Circuit Judges.

PER CURIAM:

Reeves successfully attacked his 1976 conviction for voluntary manslaughter in a habeas corpus proceeding before the district court. The court found that defective jury instructions at trial improperly placed the burden of proof upon Reeves, depriving him of due process. 452 F.Supp. 783 (W.D.N.C. 1978). The court granted relief and ordered a new trial. We reverse, for we think the jury charge, when viewed in its entirety, correctly and adequately placed the burden of proof upon the state and not upon defendant Reeves.

### I.

Reeves shot and killed Billy Edward Chasteen during the early morning hours of December 3, 1974. The two men, with several other friends, were playing cards at a home owned by Reeves. Chasteen was apparently in an unusually combative and disagreeable mood that night, although there was no evidence of ill feelings between Reeves and Chasteen prior to the shooting. Chasteen argued with Robert Johnson early in the evening, and later assaulted Johnson, cutting him on the neck with a razor.

In addition to his razor, Chasteen had a loaded shotgun at the party. He had brought the weapon inside the house because he could not lock it in his car. For no apparent reason, at around 3:00 a. m., Chasteen seized the shotgun and ordered the people present to lie upon the floor. Chasteen told his companion, Warren, to hold the gun on the group because he intended to cut their throats with the razor. Johnson immediately charged Chasteen with a chair, hitting him in the chest with its legs.

Chasteen retaliated by clubbing Johnson over the head with the shotgun barrel, inflicting a large wound and dazing Johnson. After fighting Johnson, Chasteen was shot by Reeves with a .38 caliber pistol from close range. According to the state's evidence, Chasteen dropped his shotgun during, or immediately after, the fight with Johnson, and was unarmed when killed by Reeves. According to Reeves, Chasteen turned the gun on him after beating off Johnson and started to attack when he fired in self-defense. Police officers found Chasteen holding the shotgun.

In 1976 the state brought Reeves to trial on charges of second degree murder. N.C. Gen.Stat. § 14–17. At the conclusion of the trial, the judge charged the jury concerning both second-degree murder and voluntary manslaughter. The jury convicted Reeves of the lesser offense of voluntary manslaughter, N.C.Gen.Stat. § 14–18, and he received the maximum sentence of twenty years imprisonment. In defining the two crimes for the jury, the judge gave the following instruction: [1]

> If the State proves beyond a reasonable doubt or it is admitted that the defendant intentionally killed Billy Edward Chasteen with a deadly weapon, or intentionally inflicted a wound upon Billy Edward Chasteen with a deadly weapon, which proximately caused his death, then if no other evidence is presented, the law implies first, that the killing was unlawful and second, that it was done with malice and if nothing else appears, the defendant would be guilty of second degree murder.

Reeves gained habeas relief based upon this instruction. Reeves argued the charge denied him due process because it told the jury that despite the evidence of self-defense, an implication or presumption arose from the shooting of Chasteen that the killing was unlawful, thus placing the burden of proof upon him to negate the presumption and prove self-defense. Because unlawfulness is a necessary ingredient of voluntary manslaughter under North Carolina law, Reeves claimed the charge and its presumption violated the rule of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), that the state must prove every fact necessary to constitute the crime. Reeves also claimed the presumption violated due process and that a presumed legal fact, here unlawfulness, must be proved beyond a reasonable doubt to follow from an admitted fact, here the intentional wounding of Chasteen with a deadly weapon, to withstand constitutional analysis. The district court agreed with Reeves that the charge placed an illegal burden upon him to disprove unlawfulness, and granted a new trial based upon both grounds.

## II.

In reviewing the charge given at Reeves' trial, we must apply the settled rule "[that] 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975); *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *see Henderson v. Kibbe*, 431 U.S. 145, 152 & n. 10, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Boyd v. United States*, 271 U.S. 104, 107, 46 S.Ct. 442, 70 L.Ed. 857 (1926). Thus we must evaluate the charge in its entirety to determine if an error is present. The issue for determination on habeas is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten, supra; see Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir. 1976); *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960). These tests apply with equal force to *Mullaney* challenges such as Reeves', where the inmate seeks to overturn his conviction by claiming the jury instructions improperly shifted the state's burden of proof in violation of due process. *E. g., Berrier v. Egeler*, 583 F.2d 515, 518 (6th Cir. 1978); *Halloweli v. Keve*, 555 F.2d 103, 109–11 (3d Cir. 1977); *United States ex rel.*

---

1. This segment of the charge is reprinted in 452 F.Supp. at 785.

*Castro v. Regan,* 525 F.2d 1157, 1159 (3d Cir. 1975); *Gagne v. Meachum,* 460 F.Supp. 1213, 1217–18 (D.Mass.1978); *Warlitner v. Weatherholtz,* 447 F.Supp. 82, 86 (W.D.Va. 1977); *see Porter v. Leeke,* 457 F.Supp. 253, 258 (D.S.C.1978).

After careful review of the complete charge, we conclude that the trial judge's instructions adequately explained the law of voluntary manslaughter and did not violate Reeves' rights. The judge began by stating the function of the jury in the case and by defining the reasonable doubt standard.[2] After summarizing the evidence, the judge defined the elements of second-degree murder and voluntary manslaughter. This discussion contains the challenged part of the charge. But the charge did not end there, and the judge proceeded to explain the defenses of provocation and self-defense. Regarding self-defense, the judge stated that "the burden, members of the jury, is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense." (A. 19). In subsequent portions of the charge, the judge instructed that the state had to prove beyond a reasonable doubt the lack of justification or excuse to gain a conviction for voluntary manslaughter. (A. 20). In a supplemental charge delivered after the jury had started deliberation, the court again explained that self-defense would completely excuse Chasteen's killing and that the state had to prove lack of self-defense to convict Reeves of voluntary manslaughter. (A. 22, 23, 24, 25).

 The constitutional issues addressed below are not presented for adjudication in this case, because the charge as a whole was fair. The instructions repeatedly informed the jurors that to convict, the state must prove beyond a reasonable doubt that the killing of Chasteen was unlawful, meaning that Reeves did not kill in self-defense. Although the challenged portion of the

charge might have been more precise, we do not think it placed the burden of proof upon Reeves to dispel a presumption of unlawfulness. The complete instruction adequately stated the applicable law, informed the jurors of the elements North Carolina had to establish to convict Reeves and placed no burden of persuasion on the defendant.

Because we find no constitutional infirmity in the charge, the judgment of the district court is reversed.

*REVERSED.*

---

2. "Under our system of justice, when a defendant pleads not guilty he is not required to prove his innocence. He is presumed to be innocent. The State must prove to you, the Jury, that the defendant is guilty beyond a reasonable doubt. A reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or a lack or insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you, the Jury, of the defendant's guilt."